**James BEARDSLEY, Plaintiff,**

v.

**Dick D. MOORE, et al., Defendants.**

**No. 90–0246C(6).**

United States District Court, E.D. Missouri, E.D.

June 6, 1991.

Cheryl Lynn Eia, Moser & Marsalek, St. Louis, Mo., for plaintiff.

Peter J. Krane, Schoenbeck, Schoenbeck & Assocs., St. Louis, Mo., for defendants.

## MEMORANDUM AND ORDER

GUNN, District Judge.

This matter is before the Court on a summary judgment motion filed by defendants Dick D. Moore, George Lombardi, William Armontrout, Donald Cline, Richard Childs, Paul Delo, Michael Bowersox and Larry Scott.[1]

Plaintiff is an inmate incarcerated at the Missouri State Penitentiary (MSP). He filed this action pursuant to 42 U.S.C. § 1983, alleging deprivations of his liberty interest and cruel and unusual punishment with respect to occurrences at both MSP and Potosi Correctional Center (PCC).

The undisputed facts are as follows: In August 1989 plaintiff was transferred from MSP to PCC. A few days prior to that transfer, his classification status was raised from level 3 of the Special Management Facility to level 1 of the facility, as was the status of all other inmates who were to be transferred. Upon arrival at PCC, a classification committee assigned him to phase 1 of the Administrative Segregation Unit based on a review of his file from MSP. Thirty days later, the committee again reviewed plaintiff's status and recommended that he remain in phase 1 of segregation. This recommendation was based on the fact that plaintiff had received two conduct violations since being transferred to PCC. Upon plaintiff's request, defendant Bowersox ordered that the committee's decision be reviewed, and defendant Scott justified the decision to Bowersox with written reasons based on plaintiff's history of violations at MSP and the two most recent violations at PCC.

Counts I and II of plaintiff's complaint are based on these events. In Count I, plaintiff claims he was deprived of a due process liberty interest when he was reclassified at MSP prior to transfer to PCC without a hearing. In Count II, plaintiff claims he was deprived of a liberty interest in a general population classification when defendants based their segregation classification decision on inaccurate information.

---

1. A ninth defendant, Larry Rhodes, was never served.

Plaintiff's allegations in Count III are based on his placement in temporary administrative segregation confinement following receipt of a conduct violation at PCC. While in that confinement for three days, plaintiff received his meals in brown bags. Plaintiff contends this was cruel and unusual punishment.

Count IV deals with plaintiff's return to MSP in January 1991. At that time, the classification committee's recommendation to place him in general population was twice overruled by defendant Deputy Warden Cline.[2] Plaintiff alleges this action deprived him of his liberty interest in the general population classification.

Summary judgment is appropriate absent a dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983). In this case, based on the plaintiff's allegations and the defendants' motion and accompanying affidavits and exhibits, the Court finds that defendants are entitled to judgment as a matter of law.

■ With respect to Count I, plaintiff alleges in his complaint that the change in his classification prior to transfer without a hearing was contrary to Missouri corrections procedures. Plaintiff relies on Regulation 212.040(5)(13)(1) which provides that upon temporary confinement into the Special Management Facility (SMF), inmates shall have a review of their status within 72 hours. In addition, plaintiff refers to Regulation 221.040(a) which states that transfers of inmates within functional units require team action and documentation and that neither occurred when his classification was raised from level 3 to level 1.

In response, the defendants establish, through the affidavit of defendant Armontrout, that the classification change was a temporary, non-punitive measure designed to facilitate an orderly transfer from one institution to another. *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983), states: "It is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Furthermore, defendants note that the regulations relied upon by plaintiff are inapplicable to his situation. The Court agrees. Regulation 212.040(5)(13)(1) deals with "placement" in the SMF. Plaintiff was already in SMF and merely changed classification levels within that unit. In addition, Regulation 221.040(9) deals with transfers within functional units and not movement among levels of the SMF as occurred in this case. Finally, defendants note that Regulation 212.040(4)(1) permits the placement of inmates in administrative segregation while awaiting transfer.

Thus, with respect to Count I, plaintiff fails to establish the existence of any policies or regulations which create a liberty interest in a hearing prior to his classification change within the SMF. Therefore, as a matter of law, the Court finds no due process violation.

■ Likewise, plaintiff's allegations in Count II do not establish a due process violation. While plaintiff argues that his file was inaccurately reviewed, he does not dispute any of the events which were relied upon by the committee. Defendants have attached documentation to support defendant Scott's report of plaintiff's history. There is no independent constitutional right to be placed in a particular status once one is incarcerated. *Hewitt, supra.*

■ Plaintiff also contends that defendants inappropriately reduced his classification based on five minor violations, while the Inmate Rule Book provides for a reduction of status only after accumulating six or more minor violations. However, defendants note, and the Court agrees, that the Rule Book does not provide policies or procedures regarding classification. Rather, the Rule Book appears to govern the lifestyle of inmates while incarcerated. Absent more, the Court finds no constitutional violation.

**2.** Plaintiff was later placed in general popula-   tion in February 1991.

Plaintiff's allegations in Count III fail to establish a claim of cruel and unusual punishment. He does not claim that the food was nutritionally inadequate or inedible but rather, bases his allegation solely on the fact that he received his food in a bag, rather than on a tray. Defendants submit the affidavit of Michael Rawson, food service manager at PCC at that time, in which he states that plaintiff received food which was assembled on the same day it was served and also that the food was of the same quality of foodstuffs as the meals served to the other inmates. Therefore, the Court finds no evidence of cruel and unusual punishment.

Finally, with respect to Count IV, the Court finds that plaintiff again fails to establish the deprivation of a liberty interest. There is no independent constitutional right to remain in the general prison population. *Williams v. Armontrout*, 852 F.2d 377, 378 (8th Cir.1988). Plaintiff has not cited the violation of any policy or procedure which would guarantee otherwise. Contrary to his claims, plaintiff's classification status was not revoked in January 1991. While the committee recommended he be housed in general population, the recommendation was not accepted until later in February 1991. Therefore, the Court finds that as a matter of law, plaintiff fails to establish constitutional violations by the defendants.

Accordingly,

IT IS HEREBY ORDERED that the defendants' motion for summary judgment is granted.